# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARCH SPECIALTY INSURANCE COMPANY, | Case No. 10cv1764-BTM (BLM) |
| Plaintiff, | **ORDER RE MOTION TO DISMISS AND MOTION TO STRIKE** |
| v. | |
| SKANDIA CONSTRUCTION SERVICES, INC., et al., | |
| Defendants. | |

Pending are Plaintiff's motion to dismiss certain counterclaims [doc. # 16] and Defendants' motion to strike [doc. # 30].  For the reasons set forth below, Plaintiff's motion to dismiss is **GRANTED** in part and **DENIED** in part, and Defendants' motion to strike is **DENIED**.

## I.  BACKGROUND

### A.  Complaint

This case arises from an insurance policy issued by Plaintiff to Defendants related to an apartment construction project.  The policy required Defendants to pay a $750,000 deposit premium that was adjustable per a Premium Computation Endorsement.  The Premium Computation Endorsement provides that the premium base be determined by the total costs of construction.

An audit conducted upon completion of the project determined that the actual total construction costs were $10,777,614 – almost $3 million more than the estimated cost. Pursuant to the formula set forth in the Premium Computation Endorsement, the final earned premium was determined to be $1,010,401, which exceeded the deposit premium of $750,000 by $260,401.  Plaintiff brings claims for breach of contract and unjust enrichment to recover this difference.

**B.  Counterclaims**

Defendants bring counterclaims against Plaintiff, Mark Conklin, and Continental Commercial Insurance Brokers (CCI).  Mr. Conklin is an employee of CCI.  Defendants assert that both Mr. Conklin and CCI are agents of Plaintiff and are Plaintiff's co-conspirators.

Defendants allege that the insurance policy was purchased in reliance upon representations by Mr. Conklin and CCI that any additional premium charged would be based upon a computation of the total construction cost <u>and</u> total sales of the project. Defendants assert that total sales of apartment units are projected to be $16 million less than anticipated and that the audit was flawed, in part, because of a failure to include the total sales of the project as a factor in the final adjusted premium.  Defendants bring nine counterclaims, nearly all relating to Mr. Conklin and CCI's alleged misrepresentations regarding how additional premium would be calculated.

**II.  STANDARD**

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must meet the requirements of Rule 8(a)(2), which requires the pleader to make a "short and plain statement of the claim."  This motion should be granted only where a plaintiff's complaint lacks a "cognizable legal theory" or sufficient facts to support a cognizable legal theory. *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988).  When reviewing a motion to dismiss, the allegations of material fact in plaintiff's complaint are

1    taken as true and construed in the light most favorable to the plaintiff.  *See Parks Sch. of*

2    *Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).   Although detailed factual

3    allegations are not required, factual allegations "must be enough to raise a right to relief

4    above the speculative level."  *Bell Atlantic v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955,

5    1965 (2007).   "A plaintiff's obligation to prove the 'grounds' of his 'entitle[ment] to relief'

6    requires more than labels and conclusions, and a formulaic recitation of the elements of

7    a cause of action will not do."  *Id.*  "[W]here the well-pleaded facts do not permit the court

8    to infer more than the mere possibility of misconduct, the complaint has alleged - but it

9    has not show[n] that the pleader is entitled to relief."  *Ashcroft v. Iqbal*, 129 S,Ct. 1937,

10    1950 (2009) (internal quotation marks omitted).

11

12                                      **III.  DISCUSSION**

13

14    **A.  <u>Arch's Liability For Broker's Actions</u>**

15       Plaintiff Arch Specialty Insurance Company ("Arch") seeks dismissal of all of the

16    counterclaims brought against it on the ground that it cannot be held liable any acts or

17    omissions by the broker – Mr. Conklin and CCI.  Defendants raise two independent

18    theories that would result in such liability:  (1) Mr. Conklin and CCI were acting as Arch's

19    agent; and (2) Arch was engaged in a civil conspiracy with Mr. Conklin and CCI[1].

20

21       1.  <u>Agency</u>

22       Contrary to Plaintiff's position that "the broker, is not – and under California law

23    could not be – Arch's agent", (mem. at 5-6), Mr. Conklin and CCI's status as an insurance

24    broker does not end the inquiry as to whether they acted as Arch's agent.  Although there

25    is a presumption that an insurance broker does not work on behalf of the insurer, if this

26    presumption is rebutted, brokers may be found to have dual agency status.  *See* Cal. Ins.

27    ──────────────────

28       [1] As set forth below, the Court denies Defendants' motion to strike Plaintiff's argument regarding the sufficiency of the conspiracy allegation.  The Court addresses both bases for imputing liability in this section.

1    Code § 1623; *Fraser-Yamor Agency, Inc. v. County of Del Norte*, 68 Cal. App. 3d 201,

2    213 (1st Dist. 1977) ("Although an insurance broker is ordinarily the agent of the insured

3    and not of the insurer, he may become the agent of the insurer as well as for the

4    insured.").

5          However, Defendants do not allege the presence of any of the facts listed in §

6    1623(c) that would rebut the presumption that Mr. Conklin and CCI were acting as

7    brokers on behalf of Defendants or any other facts which would show that they were

8    acting on behalf of Arch.  Instead, Defendants' counterclaim states only that "Conklin was

9    acting as the agent for CCI, who was acting as the agent for Arch."  (Counterclaim ¶ 83)

10   This threadbare statement is insufficient to establish agency status.  *See Ashcroft v.*

11   *Iqbal*, 129 S.Ct. 1937, 1954 (2009) ("The Federal Rules do not require courts to credit a

12   complaint's conclusory statements without reference to its factual context.").  Defendants

13   appear to acknowledge this insufficiency, as their opposition includes speculation about

14   facts that may be revealed in discovery that could show that Mr. Conklin and CCI were

15   acting as agents of Arch.  *See* Opp. at 5.  The Court cannot, consistent with *Twombly*

16   and *Iqbal*, allow claims against Arch to proceed based on such speculation.

17

18         2. Conspiracy

19         Under California law, the elements of a conspiracy are "(1) the formation and

20   operation of the conspiracy, (2) the wrongful act or acts done pursuant thereto, and (3)

21   the damages resulting from such act or acts."  *Wasco Prods., Inc. v. Southwall Techs.,*

22   *Inc.*, 435 F.3d 989, 991, 992 (9th Cir. 2006) *(citing Cellular Plus, Inc. v. Superior Court*,

23   14 Cal. App. 4th 1224, 1236, 18 Cal. Rptr. 2d 308 (1993)).  As discussed below,

24   Defendants have adequately pled wrongful acts that include misrepresentations that the

25   total policy premium would be based on final sales of the project.  Because total sales

26   appear to be less than what had been anticipated, damages result from the purported

27   misrepresentations.  Thus, the question here is whether Defendants have properly pled

28   that Arch was a part of the conspiracy.

1    Although Defendants' counterclaims do not contain any reference to Arch's

2 participation in the formation of the conspiracy, there are specific allegations of Arch's

3 actions taken after formation and its knowledge of the purported unlawful acts of CCI and

4 Mr. Conklin.  Defendants allege that the $750,000 premium was paid to CCI and Arch

5 (Counterclaim ¶ 63), that Arch had failed to provide a full copy of the policy containing the

6 Premium Computation Endorsement for three months, (Counterclaim ¶ 67), that Arch

7 conducted the Audit that improperly failed to include total sales of the project as a factor

8 in the final adjusted premium (Counterclaim ¶ 71), and that Arch was informed of

9 Defendants' understanding that the final premium would be based on final total sales but

10 failed to take corrective action (Counterclaim ¶ ¶ 80-84).  Because on a motion to dismiss

11 the Court must make every reasonable inference in favor of the plaintiff, *see Parks Sch.*

12 *of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995), the Court finds the above

13 allegations sufficient to show that Arch participated in the conspiracy.  Even if Arch

14 entered the conspiracy after CCI and Mr. Conklin made the allegedly false and

15 misleading statements regarding how the final adjusted premium would be calculated, it

16 can still be held liable for their conspiratorial acts.  *See Indus. Bldg. Materials, Inc. v.*

17 *Interchemical Corp.*, 437 F.2d 1336, 1343 (9th Cir. 1971) ("One who enters a conspiracy

18 late, with knowledge of what has gone before, and with the intent to pursue the same

19 objective, may be charged with preceding acts in furtherance of the conspiracy.").

20 Because Defendants sufficiently alleged that Arch was engaged in a civil conspiracy with

21 Mr. Conklin and CCI, Arch may be jointly liable for the acts of its co-conspirators.

22 Therefore, Plaintiff's motion to dismiss on the ground that Arch cannot be held liable for

23 the acts of Mr. Conklin and CCI is **DENIED**.

24

25 **B.  Sufficiency Of Individual Causes Of Action**

26    Plaintiff also challenges the third, fourth, fifth, sixth, seventh, and eighth

27 counterclaims for failure to state a claim.  Defendants agree to voluntarily dismiss the

28 seventh and eighth causes of action for bad faith action and breach of covenant of good

10cv1764-BTM (BLM)

1   faith as to Arch only.  These claims are **DISMISSED** without prejudice as to Arch.  The

2   remaining counterclaims will be addressed in turn.

3

4          1.  Fraudulent Inducement (Third Cause Of Action)

5          Plaintiff has moved to dismiss the fraudulent inducement counterclaim, arguing

6   that it is not pled with sufficient particularity to meet the standard of Fed. R. Civ. P. 9(b).

7   The Ninth Circuit has "interpreted Rule 9(b) to mean that the pleader must state the time,

8   place and specific content of the false representations as well as the identities of the

9   parties to the misrepresentation."  *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388,

10  1392-93 (9th Cir. 1988).  Averments of fraud must be accompanied by the "who, what,

11  when, where, and how" of the misconduct charged.  *Cooper v. Pickett*, 137 F.3d 616, 627

12  (9th Cir. 1997).

13         Defendants' counterclaim meets this standard.  Defendants allege that Mr. Conklin

14  misrepresented that total sales of the project would be included in the final premium

15  calculation (Counterclaim ¶ 60) and that verbal misrepresentations were made during the

16  time period from shortly before January 26, 2006 until March 2006 (Counterclaim ¶¶ 58-

17  61)  Taken together, these facts are sufficiently detailed to meet the requirements of Rule

18  9(b).[2]  Plaintiff's motion to dismiss this cause of action is **DENIED**.

19

20         2.  Negligent Failure To Procure Insurance (Fourth Cause Of Action)

21         Plaintiff seeks dismissal of this cause of action because "it fails to allege any legal

22  duty that Arch had to Defendants and thereby fails to allege a necessary element of a

23  claim for negligence."  (Mem. at 11)  However, because Defendants successfully allege

24  ────────────────

25         [2] Plaintiff's additional argument that "[t]he plain language of the Policy . . . confirms
    how the final earned premium was to be calculated and precludes Defendants' cause of
26  action for fraudulent inducement" lacks merit.  (Mem. at 10-11)  Defendants do not bring a
    breach of contract claim, but instead argue that they were induced into entering into a
27  contract based on false and misleading statements.  Whether the terms of the contract
    ultimately preclude use of total sales of the project as a factor in the final adjusted premium
28  is immaterial to whether Defendants were fraudulently induced to enter into the contract.
    *See Lazar*, 12 Cal. 4th at 638 ("[T]he plaintiff's claim [of fraudulent inducement] does not
    depend upon whether the defendant's promise is ultimately enforceable as a contract.").

1    that Arch was a co-conspirator, they need not allege an independent duty owed by Arch,

2    as long as the complaint alleges an underlying civil wrong.  *See Unruh v. Truck Ins.*

3    *Exch.*, 7 Cal. 3d 616, 631 (1972).  Plaintiff does not challenge Defendants' contention

4    that CCI and Mr. Conklin owed a duty to Defendants to procure and maintain insurance

5    coverage or otherwise challenge the sufficiency of this cause of action.  Thus, Arch's

6    motion to dismiss this cause of action on the sole ground that Arch did not owe an

7    independent duty to Defendants is **DENIED**.  Challenges to the sufficiency of Defendants'

8    negligent failure to procure insurance claim may be raised in a motion for summary

9    judgment.

10

11          3.  <u>Rescission (Fifth Cause Of Action)</u>

12          Plaintiff challenges Defendants' rescission claim in the fifth cause of action on two

13    main grounds.  First, Plaintiff asserts that "Defendants have not pleaded the elements of

14    rescission" under Cal. Civ. Code § 1691.  (Mem. at 12)  This statute states that to effect a

15    rescission, a party must give notice of rescission and offer to restore the benefits

16    received under the contract.  § 1691.  However, when these requirements have not been

17    satisfied, "the service of a pleading in an action or proceeding that seeks relief based on

18    rescission <u>shall</u> be deemed to be such notice or offer or both."  *Id*. (emphasis added).

19    Based on the plain language of the statute, Defendants claim for rescission cannot be

20    barred because of a purported failure to provide notice of rescission where, as here,

21    Plaintiff does not contend that any prejudice arose from this delay.  *C.f.* Cal. Civ. Code §

22    1693.   Moreover, Defendants need not offer to restore the benefits received under the

23    contract, where as here, Defendants contend they have nothing of benefit to return.

24    Contrary to Plaintiff's position, an offer of restoration is not a prerequisite to effect

25    rescission where a party claims that it received nothing of value under the contract.  *See*

26    *Simmons v. Briggs*, 69 Cal. App. 447 (1924) ("If plaintiff received nothing under the

27    contract, no offer of restoration was necessary. ").

28          Second, Plaintiff argues that rescission is unavailable for a unilateral mistake of

fact caused by neglect of Defendants' "duty to examine the Policy to see that it was the Policy that they intended to purchase." (Mem. at 13)  In support of its argument, Plaintiff relies on the following language from *Taff v. Atlas Assurance Co.*, 58 Cal. App. 2d 696, 703 (1943):

> It is a general rule that the receipt of a policy and its acceptance by the insured without an objection binds the insured as well as the insurer and [the insured] cannot thereafter complain that he did not read it or know its terms.  It is a duty of the insured to read his policy.

This general rule is clearly subject to exceptions, as the *Taff* court noted that an actionable mistake may lie if the insurer "took affirmative action to prevent such examination," *id.* at 703, and other courts have found that misrepresentations of policy provisions provide a reasonable excuse for the insured's failure to read the policy, *see Laing v. Occidental Life Ins. Co.*, 244 Cal. App. 2d 811, 819 (2d Dist. 1966).

Here, Defendants allege that Mr. Conklin misrepresented that the total policy premium would be based on the final sales of the project, that this statement was consistent with Mr. Conklin and Defendants' prior course of business, and that Arch delayed sending the policy to Defendants for three months in an effort to impede review of its terms.  At this stage of the proceedings, such allegations provide a sufficient excuse for Defendants' failure to review the policy.  Plaintiff's motion to dismiss Defendants claim for rescission based on a unilateral mistake is **DENIED**.

4.  Reformation (Sixth Cause Of Action)

Under Cal. Civ. Code § 3399, a contract may be reformed "[w]hen, through fraud or a mutual mistake of the parties, or a mistake of one party, which the other at the time knew or suspected, a written contract does not truly express the intention of the parties." For the reasons set forth above, Defendants have stated a claim for fraudulent misrepresentation, and their purported failure to review the policy does not preclude Defendants from asserting an actionable mistake.  Because Defendants have successfully alleged a civil conspiracy, Arch may be held jointly liable for misrepresentations made by Mr. Conklin and CCI.  Therefore, Plaintiff's motion to dismiss

Defendants' claims for reformation is **DENIED**.

## C. Motion To Strike

Defendants move to strike Plaintiff's argument that Defendants' conspiracy allegations are insufficient.  This motion is **DENIED**.  Defendants, in their response to the motion to dismiss, argued that Arch could be jointly liable for Mr. Conklin and CCI's actions under a civil conspiracy theory.  The portion of the reply brief devoted to the sufficiency of Defendants' conspiracy allegations was in response to this argument.

## IV.  CONCLUSION

Plaintiff's motion to dismiss is **GRANTED** in part and **DENIED** in part.  The seventh and eighth causes of action for bad faith action and breach of covenant of good faith are **DISMISSED** as to Plaintiff Arch.  The Court **STRIKES** Defendants' allegation that Mr. Conklin and CCI are Arch's agent. *See* Counterclaim ¶ 83.  Defendants have thirty days to file an amended complaint to cure this deficiency, if they so choose.  All other claims remain operative.  Defendants' motion to strike is **DENIED**.

**IT IS SO ORDERED.**

DATED:  July 25, 2011

Honorable Barry Ted Moskowitz
United States District Judge